Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **INNOVASIAN CUISINE ENTERPRISES, INC.,** | |
| Plaintiff, | Civil Action No. 19-16296 (ES) (ESK) |
| v. | OPINION |
| **INNOVASIAN TACO,** | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is plaintiff InnovAsian Cuisine Enterprises Inc.'s ("Plaintiff") unopposed motion for default judgment, and request for a permanent injunction, costs, and attorney fees (D.E. No. 8 ("Motion")) against Innovasian Taco ("Defendant") pursuant to Federal Rule of Civil Procedure 55(b)(2). The Court has considered Plaintiff's submission and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); *see also* L. Civ. R. 78.1(b). For the following reasons, Plaintiff's Motion is GRANTED-IN-PART AND DENIED-IN-PART, and the Court will defer the entry of judgment in favor of Plaintiff until the receipt of Plaintiff's application and supporting documentation for its request for attorney fees and costs.

**I.     Background**

Plaintiff filed the instant complaint (D.E. No. 1 ("Complaint" or "Compl.")) against Defendant asserting claims for (i) federal trademark infringement under the Lanham Act (15 U.S.C. § 1114) (Count I); (ii) common law trademark infringement and unfair competition (Count II); (iii) unfair competition under New Jersey law (N.J. Stat. Ann. §§ 56:4-1 *et seq.*) (Count III);

and (iv) unjust enrichment (Count IV). (Compl. ¶¶ 30–51).

Plaintiff owns four federal trademarks for the mark "INNOVASIAN"[1] (collectively, the "INNOVASIAN® Marks"), which it uses in connection with a line of frozen Asian food products throughout the United States. (*Id.* ¶¶ 7–8 & 14). The InnovAsian brand is allegedly "the second largest selling frozen Asian food brand in the United States." (*Id.* ¶ 14). Defendant allegedly opened a restaurant under the name "Innovasian Taco" in Westfield, New Jersey. (*Id.* ¶¶ 19–20). Plaintiff claims that Defendant operates a website, "innovasiantaco.com," an Instagram page, "www.instagra.com/Innovasiantaco," and a storefront with "Innovasian Taco" signage. (*Id.* ¶¶ 19–21). Defendant allegedly sells made-to-order food items that are similar to Plaintiff's Asian food products using the "INNOVASIAN TACO" mark. (*Id.* ¶¶ 19–22).

On June 17, 2019, and July 8, 2019, Plaintiff sent Defendant a certified letter notifying the Defendant of Plaintiff's rights in the INNOVASIAN® Marks and Defendant's infringement of those marks by its use of "INNOVASIAN TACO" at its restaurant and online. (*Id.* ¶¶ 27–28). Although Defendant signed a delivery receipt for each letter, it failed to respond to the letters as requested by Plaintiff. (*Id.*).

Accordingly, Plaintiff commenced this action on August 2, 2019. (*See generally* Compl.). The Complaint and summons were served on Defendant on September 27, 2019. (D.E. Nos. 6 & 12). After Defendant's time to answer or otherwise respond to the Complaint passed, Plaintiff filed a request for entry of default on October 31, 2019. (D.E. No. 7). Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of Court entered default against Defendant on November 1, 2019. Thereafter, Plaintiff filed the Motion that is currently before the Court with an

---

[1] Specifically, Plaintiff owns the following federal trademark registrations: (i) Reg. No. 4,983,100 for the mark "INNOVASIAN"; (ii) Reg. No. 2,820,242 for the mark "INNOVASIAN" and design; (iii) Reg. No. 2,844,454 for the mark "INNOVASIAN" and design; and (iv) Reg. No. 4,227,628 for the mark "INNOVASIAN" and design. (Compl. ¶ 7; *see* D.E. No. 1-1 "Registration Certificates").

accompanying letter in lieu of a formal brief in support of the Motion.  (*See* D.E. No. 8-1 ("Pl. Ltr. Br.")).  Defendant has not filed an opposition or response to Plaintiff's Motion.

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 55, the Court may enter default judgment against a party that fails to answer or otherwise defend against claims asserted against it.  To obtain a default judgment pursuant to Rule 55(b), the moving party must first obtain an entry of default pursuant to Rule 55(a).  *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006).  After obtaining entry of default, parties are not entitled to the subsequent entry of default judgment as of right; rather, it is within the discretion of the court whether to enter default judgment.  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

Before entering default judgment, the Court must: "(1) determine it has jurisdiction both over the subject matter and parties; (2) determine whether defendants have been properly served; (3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and (4) determine whether the plaintiff has proved damages." *Travelodge Hotels, Inc. v. Wilcox Hotel, LLC*, No. 17-0391, 2018 WL 1919955, at *3 (D.N.J. Apr. 23, 2018).  A party seeking default judgment is not entitled to relief as a matter of right; rather, the Court may enter default judgment "only if the plaintiff's factual allegations establish the right to the requested relief." *Ramada Worldwide Inc. v. Courtney Hotels USA, L.L.C.*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012) (quoting *Nautilus Ins. Co. v. Triple C. Const. Inc.*, No. 10-2164, 2011 WL 42889, at *4 (D.N.J. Jan. 6, 2011)) (internal quotation marks omitted).  At this juncture, the Court must accept all factual allegations as true, except with respect to damages.  *Premium Sports, Inc. v. Silva*, No. 15-1071, 2016 WL 223702, at *1 (D.N.J. Jan. 19, 2016).

In addition, the Court must consider the following three factors prior to granting default

judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A meritorious defense is one that "if established at trial, would completely bar plaintiff's recovery." *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 307 (E.D. Pa. 1995) (quoting *Foy v. Dicks*, 146 F.R.D. 113, 116 (E.D. Pa. 1993)). Furthermore, a defendant's culpable conduct in allowing default is a relevant consideration for a district court. *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir. 1982).

### III. Discussion

#### A. Jurisdiction and Service

When a party requests default judgment against a party that fails to file a responsive pleading, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Ramada Worldwide Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008). The Court finds that it has both subject matter jurisdiction over this matter and personal jurisdiction over Defendant.

##### i. Subject Matter Jurisdiction

"Federal courts have subject matter jurisdiction over a case if it satisfies federal question jurisdiction under 28 U.S.C. § 1331, or diversity jurisdiction under 28 U.S.C. § 1332." *Hines v. Irvington Counseling Ctr.*, 933 F. Supp. 382, 387 (D.N.J. 1996). Under 28 U.S.C. § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Thus, "a claim arises under federal law if federal law creates the cause of action." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 706 (2006) (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Here, Plaintiff alleges a claim for trademark infringement under Section 32 of the Lanham

Act pursuant to 15 U.S.C. § 1114, thereby invoking federal question jurisdiction. (*See* Compl. ¶¶ 30–38). Accordingly, the Court has subject matter jurisdiction over Count I and supplemental jurisdiction over Plaintiff's remaining state law and common law claims (Counts II, III, & IV). *See* 28 U.S.C. § 1367(a); (*see also* Compl. ¶¶ 39–51).

### ii. Personal Jurisdiction & Service of Process

"A court obtains personal jurisdiction over the parties when the complaint and summons[es] are properly served upon the defendant[s]." *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700–01 (3d Cir. 1991). "An unincorporated association, such as a limited liability company, must be served by 'delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.'" *Cerrato v. Seaboard Corp. Servs., LLC*, No. 19-9448, 2020 WL 2559535, at *1 (D.N.J. May 20, 2020) (quoting Fed. R. Civ. P. 4(h)(1)(B)). With respect to personal jurisdiction of a company, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal quotation and citation omitted) (alteration in original).

Here, Defendant is a restaurant that, according to Plaintiff, appears to be unincorporated, without either a business registration or trade name registration. (Compl. ¶ 6). However, Plaintiff alleges, on information and belief, that Defendant resides in New Jersey and operates its principal place of business at 106 Quimby Street in Westfield, New Jersey. (*Id.* ¶ 3).

Plaintiff maintains that, on Friday, September 27, 2019, its process server delivered a copy of the Summons and Complaint to Aldo Ortega, "who is designated by law to accept service of process on behalf of [Defendant]," at Defendant's alleged principal place of business in Westfield, New Jersey. (D.E. No. 6; *see* D.E. No. 12 at 1 & D.E. No. 12-1 ¶ 2). Aldo Ortega is allegedly

Defendant's owner. (D.E. No. 12 at 1 & D.E. No. 12-1 ¶ 2).

Accordingly, notwithstanding whether Defendant is an unincorporated or incorporated entity, the Court finds that it has personal jurisdiction over the Defendant because its authorized agent was served with the Summons and Complaint (*see* Fed. R. Civ. P. 4(h)(1)(B); *see also Branch Banking & Tr. v. E. Jersey Commercial, LLC*, No. 19-13940, 2020 WL 1876006, at *1 (D.N.J. Apr. 15, 2020)), and its principal place of business is allegedly located in New Jersey. *See Daimler AG*, 134 S. Ct. at 760.

### iii. Service of Process

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985)). For the reasons stated above, the Court finds that Plaintiff properly served Defendant on September 27, 2019. (*See* D.E. No. 6; *see also* D.E. No. 12 at 1 & D.E. No. 12-1 ¶ 2).

## B. Sufficiency of the Pleading

### i. Counts I–III: Trademark Infringement & Unfair Competition

Next, "the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Primo No. One in Produce, Inc. v. VG Sales LLC*, No. 16-1395, 2017 WL 202169, at *2 (D.N.J. Jan. 18, 2017) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008)). To establish a legitimate cause of action for an alleged violation of the Lanham Act, a plaintiff must show that: (1) "it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). Additionally, "to prevail on a

trademark infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized." *Piquante Brands Int'l, Ltd. v. Chloe Foods Corp.*, No. 8-4248, 2009 WL 1687484, at *3 (D.N.J. June 16, 2009) (citing *Opticians Association of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir. 1990) (hereinafter "*Opticians*"). "The first two elements are satisfied by registration and ownership of the relevant trademarks." *Coach, Inc. v. Quisqueya Agency Inc.*, No. 13-3261, 2014 WL 3345434, at *1 (D.N.J. July 8, 2014).

Here, Plaintiff has established that it is the owner of valid and legally protected INNOVASIAN® Marks in satisfaction of the first two elements. (Compl. ¶ 7; *See* Registration Certificates); *E.A. Sween Co. v. Deli Express of Tenafly, LLC.*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014) ("A 'certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark' and is therefore sufficient to establish the first and second elements of trademark infringement and unfair competition claims.") (quoting *Coach, Inc. v. Cosmetic House*, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011)). Plaintiff also contends that Defendant is not authorized to use its INNOVASIAN® Marks or any mark that is substantially similar to such marks. (Compl. ¶ 1; *see also id.* ¶¶ 27–28). Accordingly, the Court must assess whether Plaintiff has also established whether Defendant's use of "INNOVASIAN TACO" gives rise to a likelihood of confusion.

A likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992) (quoting *Ford Motor Co., v. Summit Motor Prods., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)); *see also Lorillard Techs, Inc. v. NJ Ale House, L.C.C.*, No. 14-2044, 2015 WL 1197531,

at *8 (D.N.J. Mar. 13, 2015).  The Third Circuit has established ten non-exhaustive factors when conducting a likelihood of confusion analysis.  *Interpace Corp. v. Lapp*, *Inc.*, 721 F.2d 460 (3d Cir. 1983).  The ten non-exhaustive *Lapp* factors include:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of the owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sales efforts are the same; (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and] (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*Id.* at 463.  However, the Third Circuit noted that when the trademark holder and the alleged infringer have competing goods or services, the court will rarely need to "look beyond the mark itself."  *Id.* at 462.  In addition, the Third Circuit has also "repeatedly insisted that the *Lapp* factors are not to be mechanically tallied, but rather that they are tools to guide a qualitative decision."  *A&H Sportswear*, 237 F.3d at 210.  Moreover, the Third Circuit has held that "there is a great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  *Opticians*, 920 F.2d at 195 (finding "likelihood of confusion . . . inevitable, when . . . the identical mark is used concurrently"); *see also U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) (holding that "a great likelihood of confusion [exists] when an infringer uses the exact trademark").

This Court need not conduct a detailed analysis under each *Lapp* factor because Plaintiff's Complaint, which must be perceived as true at this juncture, establishes a likelihood of confusion.


*See Comdyne I Incorporated v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). First, Plaintiff asserts that Defendant "offers similar products (prepared meals) as [Plaintiff] offers under its INNOVASIAN® [M]arks." (Compl. ¶ 24). Thus, Plaintiff and Defendant are competitors who offer ready-to-eat-meals in the food industry. (*See id.* ¶¶ 5, 14, 17, 22 & 24). In using Plaintiff's INNOVASIAN® Marks, Plaintiff contends that "Defendant seeks and receives a direct and material benefit." (*Id.* ¶ 25). Moreover, Plaintiff's INNOVASIAN® Marks have allegedly "gained considerable notoriety and goodwill" among consumers such that Defendant's use of "INNOVASIAN TACO" will likely result in consumer confusion. (*Id.* ¶¶ 16 & 26). Most significantly, aside from the word "TACO," Defendant's "INNOVASIAN TACO" mark is comprised of Plaintiff's identical mark "INNOVASIAN." Accordingly, there is little doubt that Defendant's concurrent use of "INNOVASIAN" is highly likely to cause consumer confusion as to Defendant's affiliation with Plaintiff. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (finding "no question . . . that [plaintiff and defendant] are using the same legally protectable trademark, owned by . . . [plaintiff] and that their concurrent use is highly likely to cause consumer confusion"). Thus, by accepting Plaintiff's allegations as true, the Complaint sufficiently establishes that Defendant's "INNOVASIAN TACO" mark infringes on Plaintiff's INNOVASIAN® Marks under Count I of the Complaint for an alleged violation of 15 U.S.C. § 1114.

Plaintiff also asserts claims for common law trademark infringement and unfair competition, as well as unfair competition under New Jersey statutory law in Counts II and III of the Complaint. (Compl. ¶¶ 39–47). Because the elements for claims asserted under Counts II and III are encompassed by the elements under Count I, Plaintiff also satisfies Counts II and III of the Complaint. *See Cornwell Quality Tools Co. v. Blanco,* No. 16-05086, 2018 WL 2441750, at *3

(D.N.J. May 31, 2018) (citing *Fruit Flowers, LLC v. Jammala, LLC*, No. 14-5834, 2015 WL 5722598, at *3 (D.N.J. Sept. 29, 2015)).

### ii. Count IV: Unjust Enrichment

"To establish a claim for unjust enrichment under New Jersey law, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 196 (D.N.J. 2012) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). Here, Plaintiff generally avers that "Defendant seeks and receives a direct material benefit from [its] use of InnovAsian's INNOVASIAN® [M]arks." (Compl. ¶ 25). Plaintiff also alleges that Defendant's use of the mark "INNOVASIAN" is without Plaintiff's authorization. (*Id.* ¶ 1). And, Plaintiff has invested both time and marketing to promote its INNOVASIAN® Marks. (*Id.* ¶¶ 11–12 & 16). Moreover, Plaintiff asserts that it promotes and sells its food products bearing the INNOVASIAN® Marks "at no fewer than twenty (20) different locations within six miles of the [Defendant's restaurant]." (*Id.* ¶ 23). Accordingly, based on these allegations, the Court finds that Plaintiff has established a claim for unjust enrichment. *See Cornwell Quality Tools Co. v. Blanco*, No. 16-05086, 2018 WL 2441750, at *3 (D.N.J. May 31, 2018).

### C. Appropriateness of Default Judgment

Next, to determine whether granting default judgment is proper, the Court must make factual findings "as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc., v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

Courts have noted, however, that "these factors are more applicable to situations where the

-10-

defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default." *Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (citation omitted). Where, as here, the defendant failed to plead or otherwise defend, courts have held that they are "not in a position then to determine whether [the defendant has] a meritorious defense or whether any delay is the result of culpable misconduct." *Id.* (internal quotation marks and citation omitted). In fact, Defendant's "[r]eckless disregard for repeated communications from plaintiff[] . . . can satisfy the culpable conduct standard." *Nationwide*, 175 F. App'x at 523 (citation omitted).

Additionally, Defendant has not responded to Plaintiff's motion for default judgment. In such a situation, courts have held that denying default would prejudice the plaintiff because there would be no recourse against the defendant. *Days Inn*, 2007 WL 1674485, at *5; *see also Gowan v. Cont'l Airlines, Inc.*, No. 10-1858, 2012 WL 2838924, at *2 (D.N.J. July 9, 2012) (finding plaintiff "will suffer prejudice if the Court does not enter default judgment as [p]laintiff has no other means of seeking damages for the harm caused by [d]efendant"). And, "[t]he public concern for enforcing the Lanham Act . . . weighs in favor of entering default judgment in this matter." *Days Inns*, 2007 WL 1674485 at *5.

This reasoning is applicable to the instant matter. Defendant has not filed an answer to the Complaint or a responsive pleading. Nor has Defendant filed an opposition to Plaintiff's Motion. Accordingly, if default is not entered, Plaintiff has no other available recourse.

**D. Damages**

 **i. Injunctive Relief**

Plaintiff requests that the Court enter a permanent injunction against Defendant to enjoin it from further infringing on Plaintiff's INNOVASIAN® Marks and to abandon and/or cancel any

application to register the mark "INNOVASIAN TACO," or a substantially similar mark to Plaintiff's INNOVASIAN® Marks. (Pl. Ltr. Br. at 6). For the Court to grant injunctive relief to prevent further violation of Plaintiff's mark, Plaintiff must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted).

Courts may enter a permanent injunction against defendants in a trademark infringement and unfair competition case "in the context of a default judgment where the[ ] [permanent injunction] requirements are met." *Howard v. Laws*, No. 13-0957, 2014 WL 3925536, at *8 (D.N.J. Aug. 12, 2014); *see also Coach, Inc. v. Ocean Point Gifts*, No. 09-4215, 2010 WL 2521444, at *10 (D.N.J. June 14, 2010). Additionally, pursuant to 15 U.S.C. § 1116, "[c]ourts ha[ve] the authority to grant injunctive and other equitable relief to prevent . . . violations of a plaintiff's trademark rights." *Chanel*, 558 F. Supp. 2d at 539 (D.N.J. 2008).

Here, the Court finds that permanent injunctive relief is warranted. First, it is well settled that trademark infringement may amount to irreparable injury as a matter of law. *See Citizens Fin. Grp. Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 125 (3d Cir. 2004) (determining that trademark infringement amounts to irreparable injury as a matter of law). This is because the "[l]ack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quoting *Opticians*, 920 F.2d at 196); *see also Coach, Inc. v. Bags & Accessories*, No. 10-2555, 2011 WL 1882403, at

\*9 (D.N.J. May 17, 2011).  This is precisely the case here, where Defendant's continued use of the "INNOVASIAN TACO" mark threatens Plaintiff's good will and reputation garnered from its INNOVASIAN® Marks.  (Compl. ¶¶ 16–18 & 41; D.E. No. 8-2 ¶¶ 13–14).  Accordingly, Plaintiff has established that monetary damages are inadequate to compensate its injury.

Furthermore, in considering the balance of hardships to Plaintiff and Defendant, the Court finds that equity warrants the relief Plaintiff seeks.  Here, Defendant will not be unduly burdened by the issuance of an injunction.  In fact, the only "hardship" to Defendant is that it will be refrained from engaging in continuous unlawful conduct.  *See Coach*, 2011 WL 1882403 at \*9 (finding that "[t]he only hardship imposed upon the [d]efendants is that they obey the law").  Thus, the balance of the hardships warrants an equitable remedy.

Finally, the public interest weighs in favor of Plaintiff.  The Third Circuit has recognized the public interest in enforcing trademark rights.  *See Bill Blass, Ltd. v. SAZ Corp.*, 751 F.2d 152, 156 (3d Cir. 1984) (determining that "there is a public interest in the protection of the trademark and to avoid confusion in the public").  Here, "[i]ssuing an injunction will serve the public interest goals of preventing consumer confusion and the trademark holder's property interest."  *Coach*, 2011 WL 1882403, at \*9 (citing *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 883 (S.D. Ohio 2007)).

Accordingly, because Plaintiff has satisfied the factors for a permanent injunction articulated in *eBay*, the Court will grant Plaintiff a permanent injunction that prevents Defendant from further infringing on Plaintiff's INNOVASIAN® Marks.  *See eBay*, 547 U.S. at 388. However, the Court will not grant an injunction in so much as Plaintiff seeks to have Defendant cancel or abandon any application to register "INNOVASIAN TACO" or a similar mark, because Plaintiff does not allege that such an application exists.

### ii. Attorney Fees

Finally, Plaintiff seeks its reasonable attorney fees and costs, and requests leave to certify the total amount of its attorney fees and costs. (Pl. Ltr. Br. at 7–8). The Lanham Act expressly permits an award of attorney fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 585 (D.N.J. 2002) (citing *Securacomm Consulting, Inc. v. Securacomm, Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)); *see also Urban Outfitters, Inc. v. BCBG Max Azria Grp., Inc.*, 430 F. App'x 131, 135 (3d Cir. 2011) (noting that "in light of the instances of intentional infringement . . . [defendant is ordered] to pay 50% of [plaintiff's] attorneys' fees"); *Chanel*, 558 F. Supp. 2d at 539 (concluding that defendant's "conduct constituted willful infringement, and [plaintiff] is entitled to attorney's fees").

In the present case, because Defendant wholly failed to respond to Plaintiff's Complaint and Motion, "the Court can infer that the trademark infringement was indeed willful." *See Piquante*, 2009 WL 1687484, at *7. In addition, Defendant's continuous use of "INNOVASIAN TACO" after Plaintiff sent Defendant two cease-and-desist letters provides additional evidence of willful infringement. (*See* Compl. ¶¶ 27–28). Thus, the Court finds that Plaintiff is entitled to fees pursuant to 15 U.S.C. § 1117(a).

However, because Plaintiff has not submitted any invoices or billing records to substantiate its request for attorney fees and costs, the Court declines to grant such relief at this time. *See, e.g.*, *Howard*, 2014 WL 3925536, at *9 (holding that "[w]hile [p]laintiff has requested specific figures representing attorney's fees and costs, [p]laintiff has not yet submitted proof of these amounts . . .

. The amount of fees and costs will be determined upon an application and accompanying affidavit of counsel"); *E.A. Sween Co.*, 19 F. Supp. 3d at 578 (finding willful infringement but requiring a submission of proofs from plaintiff's counsel before awarding attorneys'; fees and costs); *Piquante*, 2009 WL 1687484, at *6 ("warrant[ing] an award of attorney's fees upon detailed proof submitted to th[e] Court at a damages hearing").  Accordingly, the Court grants Plaintiff's request to file a certification with the total amount of its attorney fees and costs.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Plaintiff's motion for default judgment and a permanent injunction to enjoin Defendant from using its "INNOVASIAN TACO" mark.  Although the Court finds that Plaintiff is entitled to reasonable attorney fees and costs, Plaintiff must first certify the amount of its attorney fees and costs within thirty days of this Court's Opinion and Order.  An appropriate order follows.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**